William BLAKE, Plaintiff

v.

BALTIMORE COUNTY, MARYLAND, et al., Defendants.

Civil Case No. L–07–0050.

United States District Court, D. Maryland.

Signed Nov. 28, 2012.

Kathleen M. Cahill, Law Offices of Kathleen M. Cahill, Towson, MD, for Plaintiff.

Jeffrey Grant Cook, John Edward Beverungen, Paul McLane Mayhew, Baltimore County Office of Law, Towson, MD, for Defendants.

## MEMORANDUM ORDER

BENSON EVERETT LEGG, District Judge.

Now pending is Plaintiff's Motion for Attorneys' Fees. Docket Nos. 210 and 233. This Court has thoroughly reviewed the record and has held two hearings. For the reasons stated below, this Court will award attorneys' fees of $494,423 plus costs of $17,716.

## I. Background

Because the facts are laid out in this Court's Memorandum Opinion of July 1, 2008, Docket No. 59, a brief summary will suffice. This case tested whether the Bal-

timore County (the "County") Police Department could, in 2006, lawfully order Detective William Blake ("Blake") to undergo a fitness-for-duty physical examination, including an electroencephalogram (EEG). Blake, who had experienced a seizure episode in 1996, but who had performed his duties without incident since then, objected and contended that the order violated the Americans with Disabilities Act ("ADA").

Litigation began when Blake, in December 2006, filed a charge with the Equal Employment Opportunity Commission ("EEOC"). After exhausting his administrative remedies, which included involvement by the EEOC and the Department of Justice ("DOJ"), Blake filed suit on January 8, 2007. Save for the fee petition, litigation ended on July 15, 2011, when the United States Court of Appeals for the Fourth Circuit affirmed a jury verdict in Blake's favor and the jury's award of $225,000 in compensatory damages.

■ Under the ADA, successful plaintiffs are entitled to an award of reasonable attorneys' fees and costs. *See* 42 U.S.C. § 12205.[1] "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Kathleen Cahill ("Cahill"), who represented Blake from the outset of the case, seeks an award of $450,075, representing 1059 hours of work at $425 per hour.[2] Michael F. Smith ("Smith"), an appellate specialist whom Cahill brought in to handle the appeal, seeks an award of $144,000 representing 384 hours of work at $375 per

---

1. Courts have interpreted this provision of the ADA consistently with other civil rights fee provisions, including 42 U.S.C. § 1988. *See Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 & n. 3 (4th Cir.2001).

2. Throughout this opinion, the Court has rounded dollar figures and hour fractions down to the nearest whole number.

hour. Combined, the fee petition seeks $594,075 in attorneys' fees and $17,716 in costs. Baltimore County, while conceding that Blake's counsel are entitled to substantial attorneys' fees, contends that $276,245 is the upper limit. The County does not contest Blake's request for costs of $17,716, however.

## II. Legal Standard

When reviewing a fee petition, a court uses the "lodestar method." The court multiplies the number of hours reasonably expended by the attorneys times their reasonable hourly rates. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The court then decides whether the lodestar fee should be enhanced or reduced in light of the litigation result obtained.

█ This Court must, therefore, determine a reasonable hourly rate for both Cahill and Smith. For each, the Court must also decide whether the hours billed by each attorney are reasonable. In making these determinations, the Court must take into consideration the twelve *Johnson* factors:

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the attorney's customary fee for like work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or by circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client, and

(12) attorneys' fees awards in similar cases.

*See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n. 28 (4th Cir.1978) (adopting the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) and holding that "any award must be accompanied by detailed findings of fact with regard to the factors considered").

█ The Supreme Court has mandated that counsel seeking fees must exercise careful billing judgment and exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. When attorneys' fees are being paid out of public funds, courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result." *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C.Cir.2004).

## III. Analysis

### A. Hourly Rate

█ Applying the *Johnson* factors, the Court concludes that reasonable hourly rates for Cahill and Smith in this case are $385 and $365 respectively.[3] In determin-

---

**3.** Several of the *Johnson* factors speak to the appropriate hourly rate. These include the novelty and difficulty of the questions raised; the skill required to properly perform the legal services rendered; the attorney's opportunity costs in pressing the litigation; the

ing whether counsel's hourly rates are reasonable, a court must consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 890 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

■■■ The market rate for a particular attorney may be proven by the "rate which clients normally and willingly pay the petitioning attorneys," and an attorney's actual billing rate can provide a starting point for purposes of establishing a prevailing market rate. *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (citing *Gusman v. Unisys Corp.,* 986 F.2d 1146 (7th Cir.1993)). The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits. *Id.* Evidence of the prevailing market rate often takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. *CoStar Group, Inc. v. LoopNet, Inc.,* 106 F.Supp.2d 780, 788 (D.Md.2000).

■■■ The inquiry begins with guidelines adopted by this Court in 2008 to provide guidance with respect to fee petitions and awards. Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, App. B, Local Rules (D.Md. 2011) [hereinafter "the Guidelines"]. The Guidelines establish reasonable hourly rates for lawyers with different levels of experience. For attorneys who have been admitted to the bar for 15 years or more, the Guideline range is $275–$400 per hour. This range applies to both Cahill and Smith, who have

28 and 17 of years of experience, respectively.

The Local Rule is a guideline rather than a mandatory range, and there are instances in which judges of this Court have approved hourly rates that exceed the top end of the range. Because the Guidelines were adopted four years ago, the rates are somewhat out of date. It is difficult to determine how much they are out of line, however. On the one hand, inflation since 2008 would suggest that the Guideline range is too low. On the other, the financial crisis of 2008, the persistent recession, and the erosion of the demand for legal services might suggest that the Guideline range should not be increased. In any event, the Guidelines remain in effect, and the Court will take them into consideration.

In addition to the Guidelines, the parties have submitted a plethora of information bearing on an appropriate hourly rate.[4] Although the Court has considered all of the submissions, it will focus on the most pertinent data. The Baltimore Business Journal published a list of the fifty largest law firms in the Baltimore area, including their 2011 billing rates, if disclosed. *See* Docket No. 233–6. The two largest law firms submitting billing rates, Venable LLP and Miles & Stockbridge PC, charge up to $576 and $695, respectively, for their top partners' time. The twentieth-largest firm, Kramon & Graham P.A., charges up to $396 for their partners. The thirty-sixth largest firm, Bowie & Jensen LLC, in Towson, Maryland, has 18 attorneys and an employment practice, and charges up to $365 for its top partners' time.

customary fee for like work; the attorney's expectations at the outset of the litigation; and the experience, reputation and ability of the attorney. *See Johnson,* 488 F.2d at 717–19.

4. The materials submitted included, inter alia, the affidavits of prominent counsel, published surveys of legal rates in the Baltimore market, and fee award opinions from this jurisdiction.

Also pertinent is Cahill and Smith's fee arrangement with Blake. Throughout the case, both were compensated by Blake's union, the Fraternal Order of Police (the "Union"), at the rate of $300 per hour. The County contends that the best evidence of a reasonable hourly fee in this case is the rate actually paid by the Union. The County would, however, agree to a modest increase to $325 per hour to take into consideration the time value of money. Cahill and Smith respond that they took the case on a modified contingency fee basis at a discounted hourly rate. Under their arrangement with Blake and the Union, they would, if successful on the merits, file a fee petition. The Union would be reimbursed for the amount it has paid, and the attorneys would be entitled to the remainder.

Because it stipulates a discounted rate, Cahill and Smith's retainer agreement does not establish a reasonable market rate. Nevertheless, the fact that Cahill and Smith did not bear the full risk inherent in a contingency fee is significant. The risk that an attorney takes when representing a client on a full contingency fee basis, which is often the case in employment discrimination cases, justifies a risk premium. Cahill and Smith did not assume that full risk in this case.

Ms. Cahill is the sole member of the Law Offices of Kathleen Cahill LLC, located in Towson, Maryland. She specializes in employment and civil rights cases. Because most of her work is undertaken on a contingency fee basis, Cahill does not have an established hourly rate for representing litigation clients. When Cahill does charge by the hour, she bases her rates on the means of her clients. For a one-hour consultation, Cahill charges $375. *See* Docket No. 233–1. Because Cahill has not received a fee award in any other case, that benchmark is unavailable as a comparison.

Mr. Smith is the sole member of Smith Appellate Law Firm PLLC, which is based in Washington, D.C. A significant part of his practice is in Michigan, where he began his career. Smith bills by the hour for most of his work. He charges different rates depending on whether he is working in D.C. or in Michigan. His D.C. hourly rate was $375 in 2010 and $400 in 2011. *See* Docket No. 233–2. His standard Michigan hourly rate in 2010 and 2011 was $300, although he charged clients between $230 and $375. *Id.*

Among the *Johnson* factors is the attorney's opportunity cost in taking the case. Neither Cahill nor Smith have identified any work, especially work at a higher hourly rate, that they turned down in order to represent Blake.

Turning to the quality of the representation, both Cahill and Smith merit high marks. Both are experienced, effective attorneys who represented Blake zealously and well. A sole practitioner, Cahill bore the burden, alone and unaided, of litigating through trial a contentious, protracted case against a formidable adversary. Smith's brief in the Fourth Circuit was thorough and well written. They achieved an excellent result for Blake.

The litigation involved a complicated, technical statute. Administrative exhaustion required coordination with both the EEOC and the DOJ. The central legal issue, whether an asymptomatic employee with a seizure in his past can be required to undergo a medical exam, was unresolved, requiring a trial to provide an answer. The trial took six days and featured expert medical testimony. Baltimore County appealed, requiring Cahill and Smith to defend both liability and damages in the Fourth Circuit. Beyond peradven-

ture, the case required experienced, well-qualified attorneys.

Cahill and Smith have presented evidence to justify their requested hourly rates of $425 and $375, respectively. Without in any way disparaging the quality of their work, the Court concludes that a somewhat lower rate best fits within the *Johnson* framework. Rates of $385 for Cahill and $365 for Smith are tethered to the Guidelines, the published market data, and the hourly rates they have charged clients in other cases.

### B. Hours Expended

■ The Court now turns to the number of hours billed. As the fee applicant, Plaintiff has the burden of demonstrating with sufficient detail that the hours expended on the litigation for which fees are sought are reasonable. *Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir.2002) (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). To meet this burden, Blake must produce "an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent." *Thompson v. U.S. Dept. of Housing and Urban Dev.*, No. MGJ–95–309, 2002 WL 31777631, at *9 (D.Md. Nov. 21, 2002).

■ The case law provides a number of other guiding principles. An award of attorneys' fees may not include hours that are excessive, redundant, or unnecessary. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. "Those who elect a militant defense are responsible for the time and effort they extract from their opponent. A

party cannot litigate tenaciously and then complain about the time spent by the opposing party in response." *Imgarten v. Bellboy Corp.*, 383 F.Supp.2d 825, 840 (D.Md.2005) (citing *Copeland v. Marshall*, 641 F.2d 880, 904 n. 53 (D.C.Cir.1980)).

Plaintiff's counsel have met their initial burden by submitting their billing records, which contain detailed, contemporaneous records of the hours expended. Counsel posit that the total number of hours reasonably expended in the prosecution of Blake's case is 1443.[5] Of this total, Cahill spent 1059 billable hours, and Smith spent 384 hours.[6]

Helpfully, the County has limited its challenge to the time spent by Cahill and Smith on four phases of the case: (1) Case Development and Consultations with Blake, the EEOC, and the DOJ; (2) Motions Practice; (3) Appeal, and (4) Fee Petition. The Court has carefully considered the parties' arguments with respect to each category. With respect to the first two, the Court concludes that the hours claimed are reasonable.

■ The County's chief objection to Cahill's consulting time concerns the number of hours that she spent communicating with the DOJ. During administrative exhaustion, the DOJ was necessarily involved with Blake's case, interviewing him twice. After Blake filed suit, the DOJ continued investigating similar claims made by other County employees. The DOJ and the County eventually settled those claims by simultaneously filing a complaint and a

---

**5.** This figure is inclusive of the hours that both attorneys spent on the unsuccessful Motion for Sanctions, which is discussed below.

**6.** In the briefing, Cahill and Smith did not clearly present the total number of hours that they devoted to the case. The Court reached the totals by summing the hours mentioned at

various points in the briefing: for Cahill, the numbers were 950.75 (Docket No. 233 at 14), 80.2 (Docket No. 242 at 25), and 28.9 hours (Docket No. 255–5). For Smith, the numbers were 261.5 (Docket No. 233 at 15), 95.6 (Docket No. 242 at 25), and 26.9 hours (Docket No. 255–5).

consent decree in this Court.[7] The time that Cahill spent cooperating with the DOJ was reasonable.

Turning to the second category, Cahill claims 140 hours for time spent on motions practice in the District Court. Her time chiefly included work on two rounds of cross-motions for summary judgment. In total, Cahill filed seven summary judgment briefs totaling 128 pages. Having reviewed the briefs, the Court concludes Cahill's time was reasonable.

The Court will, however, disallow some of the hours claimed by Cahill and Smith on the appeal and fee petition. When the County noted its appeal, Cahill enlisted Smith, an appellate specialist. Smith devoted 243 hours to the appeal and Cahill devoted 63, for a total of 306 hours. Smith and Cahill have agreed to reduce their hours for the time spent on an unsuccessful motion for sanctions against the County. This reduction brings their totals to 228 (Smith) and 57 (Cahill).

■ Contending that 285 hours is excessive, the County advocates a one-third reduction to 190 hours. While the total hours devoted is high for an appeal, especially one in which the Fourth Circuit waived argument, the Court will cut each attorney's time by only 15 hours each. In reaching this decision, the Court relies on a number of factors, including the following.

An unusual dispute over the Joint Appendix drove up the hours. When it filed the Joint Appendix, the County omitted many documents that Blake had designated. Blake moved to strike the Joint Appendix. The Court of Appeals ordered the County to file a supplemental Joint Appendix, including the omitted documents. Smith spent 56 hours on this issue. Because Blake prevailed on this issue, the Court will not reduce Smith's hours. As this Court has previously noted, a party cannot litigate tenaciously and then complain about the time spent by the opposing party in response.

Smith spent 95 hours on the brief, which is a high number. Nevertheless, the brief was thoroughly researched and well written. Smith also identified a procedural issue that the appeals court ultimately adopted as its rationale for affirming on liability.

That said, although much of Cahill's time assisted Smith by reducing his learning curve, this Court concludes that 57 hours for Cahill to support and review Smith's work is excessive. The Court will, therefore, reduce her time by 15 hours. The Court will also reduce by 15 hours the time (33 hours) that Smith spent on "general case management and other miscellaneous matters." Docket No. 242–7.

The final category that the County contests concerns time that Cahill and Smith spent on the fee petition. By the Court's count, Cahill has billed a total of 138 hours for her work on the fee petition,[8] while Smith has billed 140 hours,[9] for a total of 278 hours. These totals should be reduced by 43 hours, the County maintains.

7. On August 8, 2012, the DOJ simultaneously filed in this Court both a complaint and a consent decree, the terms of which had been agreed to by the DOJ and the County. After Judge William D. Quarles approved the consent decree, the case was closed. *See United States v. Baltimore County,* 12–cv–02327–WDQ.

8. This figure represents the total of 29.6 (Docket No. 233 at 7), 80.2 (Docket No. 242 at 25), and 28.9 hours (Docket No. 255–5).

9. The total of 17.9 (Docket No. 233 at 7), 95.6 (Docket No. 242 at 25), and 26.9 hours (Docket No. 255–5).

The Court agrees that the fee petition time should be cut by 40 hours, 20 each for Cahill and Smith. *See Chapman v. Ourisman Chevrolet Co.,* AW–08–2545, 2011 WL 2651867, at *15 (D.Md. July 1, 2011) (reducing award because approximately 45 hours spent on motion for attorneys' fees by two experienced attorneys reflected duplicative work). Although counsel are entitled to receive reasonable attorneys' fees for work related to a fee petition, a "request for attorneys' fees should not result in a second major litigation," *Hyatt,* 315 F.3d at 253 (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933).

## C. Adjustments to the Lodestar Fee

Multiplying counsel's hourly rates by the allowable hours, the Court reaches the lodestar fees in this case. Cahill's reasonable fee is $391,930 ($385 × 1018 hours). Smith's reasonable fee is $121,910 ($365 × 334 hours). Having done this, the Court next considers whether the lodestar fees require adjustment.

 The County requests a 10% reduction in the total fees because Cahill and Smith failed to comply with this Court's Local Rule requiring counsel in fee-shifting cases to file quarterly reports showing the amount of time spent on the case and the total value claimed for that time.[10] In summary, counsel for Blake filed only four of the eighteen required reports. The four reports were insufficiently detailed. Moreover, early in the litigation the County requested quarterly statements.

Among its purposes, the Local Rule avoids surprises and encourages settlement. While Cahill contends that the County never seriously considered settlement, the County was deprived of accurate information about the risks and rewards of continued litigation. Therefore, the Court concludes that a reduction in the lodestar fee is appropriate. The Court will reduce Cahill's fee by 5%, but will not reduce Smith's fee, because Smith was not associated with the case until the appeal was filed. Applying this reduction to Cahill only, the Court awards fees of $372,333 to Cahill and $121,910 to Smith.

## D. Costs

Detective Blake requests a cost award of $17,716 in this case, which the County does not dispute. It is well established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award. The Fourth Circuit has explained that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). As these costs are uncontested and appear to the Court to be reasonable, they shall be awarded.

## IV. Conclusion

In many fee-shifting cases, the number of hours expended by plaintiff's counsel can be measured against the billing rec-

---

**10.** The Court's Local Rules provide:

> Counsel for a party intending to seek fees if the party prevails shall submit to opposing counsel quarterly statements showing the amount of time spent on the case and the total value of that time.... Failure to submit these statements may result in a denial or reduction of fees.... Opposing counsel

may not seek a denial or reduction of fees from the court if he/she did not first request that such statements be provided.

D.Md. Loc. Adm. R.App. B(1)(c) & fn. 3. The portion of the rule requiring opposing counsel to request the quarterly statements before seeking a reduction of fees became effective on January 1, 2008.

ords of defense counsel. In this case, this comparison was unavailable because attorneys for the Baltimore County Office of Law do not keep time sheets, which is one of the benefits of government employment. Additionally, Jeffrey G. Cook, the fine attorney for Baltimore County who handled aspects of the case, including the appeal, tragically died in April 2011. His first-hand knowledge of the litigation was missing from the record.

Nothing in this opinion is in any way intended to reflect adversely on the attorneys who handled this case. Both sides were capably and professionally represented. The case was hard fought on both sides, but not unreasonably so. The significant fee award reflects the serious nature of the case as well as the diligence of counsel. While the total cost to the County is high, there is a silver lining, however. This case may ultimately avoid future litigation by providing guidance with respect to fitness-for-duty examinations.

For the reasons stated above, Plaintiff's Motion for Attorneys' Fees, Docket Nos. 210 and 233, is GRANTED in the amounts of $494,423 for attorneys' fees and $17,716 for costs.